341 So.2d 639 (1977)
Irving ST. PE
v.
HOWARD P. FOLEY ELECTRIC COMPANY and the Hartford Insurance Company.
No. 8053.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
*640 Ganucheau & Allmand, Bradford R. Roberts, II, New Orleans, for plaintiff-appellee.
E. H. Cohen, New Orleans, for defendants-appellants.
Before REDMANN, STOULIG and MORIAL, JJ.
MORIAL, Judge.
Plaintiff sued for total and permanent disability and medical benefits resulting from injuries sustained in the course and scope of his employment. LSA-R.S. 23:1021, et seq. The trial court rendered judgment in favor of plaintiff against defendants, Howard P. Foley Electric Company (Foley) and The Hartford Insurance Group for workmen's compensation at the rate of $65.00 per week for five hundred weeks from the date of the accident. Defendants appeal. We affirm.
Plaintiff was employed as an electrician at the Superdome Stadium for defendant Foley. On March 8, 1974, while acting in the course and scope of his employment he was injured lifting a large metal electric light pole. Plaintiff slipped and his left leg gave out from under him resulting in an injury to his back and an inguinal hernia. The hernia was surgically repaired and plaintiff made a good recovery from the operation. It is admitted by the parties that plaintiff had a preexisting deformity of his lower left leg which he sustained while jumping over a ditch in 1943 while in the armed services.
Plaintiff continually had problems with his leg but was always able to engage in physical labor. In 1963, plaintiff's leg gave him some problems and he went to the Veterans Administration Hospital. He was found to have a 10% disability of his leg. However, he continued working. In 1973, after having worked for Foley on the Superdome Stadium construction project for a few months, plaintiff's leg grew increasingly worse and he again entered the Veterans Administration Hospital for treatment. The doctors there increased his disability to 30% and gave him a leg brace with a special drop shoe. He continued to work at the Superdome until the March 8 accident. Following the accident he experienced great pain in his back which radiated into his leg. He testified he was no longer able to engage in his previous employment.
Mr. St. Pe went to the treating physician, Dr. Nick Accardo, an orthopedic surgeon some sixteen times following the accident of March 8, 1974. Dr. Accardo found plaintiff had an acute lumbosacral syndrome and an inguinal hernia. He was of the opinion *641 that the lumbosacral syndrome affected his limb and was the cause of the pain radiating down into his lower left limb which was not present prior to the accident. Dr. Accardo believed that plaintiff worked under a handicap prior to the accident because of the condition of his leg and stated he would not have passed St. Pe had he conducted a pre-employment physical examination. He testified that plaintiff may possibly have a ruptured disc, but that further evaluations were necessary to make such a determination. Dr. Accardo believed that the fall totally disabled Mr. St. Pe and that he would remain disabled.
Dr. Paul Larsen, a neurologist, examined plaintiff on April 15, 1975. He testified that in comparing the VA report of November 1973 to his own findings of April 1975, he did not find any change in the amount of disability to plaintiff's leg following the accident. In his opinion, the fall had no effect on plaintiff's over all disability and he could do the same work he was doing prior to the accident.
Dr. Williams, an orthopedic surgeon, found that plaintiff had a cavovarus deformity of the left foot and severe peroneal palsy on his left side. He felt this had been a long standing condition and not a direct result of the accident. Dr. Williams did state in a second report that plaintiff's recovery from the accident could be delayed by the deformity and weakness in his lower left extremity. He was of the opinion that plaintiff should not return to any type of work which required prolonged standing, walking, climbing or squatting. He could not offer any explanation as to why the plaintiff could no longer work following the fall.
Dr. Faust, a general surgeon, saw plaintiff once on September 11, 1974. He did not think that plaintiff's disability was due to the fall. Dr. Walter Brent, an orthopedic surgeon, examined plaintiff on August 12, 1974. He found plaintiff had received an acute low back sprain which was superimposed on a service connected injury. He found that plaintiff had recovered from the sprain and that his continuing pain was due to the service injury. Dr. Brent did not think the plaintiff could perform the duties of an electrician which require climbing, squatting or long periods of walking.
The issue presented on appeal is whether or not there is a causal connection between the accident and the disability of which plaintiff complains.
There is sufficient lay testimony in the record to support a finding that prior to March 8, 1974 plaintiff was able-bodied and considered a good worker by his foremen and fellow workers. The lay testimony further supports a finding that following the accident, plaintiff experienced severe pain in his lower back, side and leg, and was unable to perform any physical work. We consider the lay testimony which has great probative value in establishing certain facts such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975).
The medical testimony is admittedly in conflict as to the effect of the accident on plaintiff's disability. However, Dr. Accardo, the treating physician, monitored plaintiff's progression for over a year and a half and found the lumbosacral syndrome to be the final cause of plaintiff's disability. This testimony is given great weight because of the greater opportunity of Dr. Accardo to observe the plaintiff over an extended period of treatment. See Williams v. Liberty Mutual Insurance Co., 327 So.2d 462 (La.App. 3 Cir. 1976). It is also significant that three of the five doctors found that plaintiff could not return to the same kind of physical labor. Also, those who testified that the fall was not the cause of plaintiff's disability could not explain why he was suddenly unable to perform the work he previously performed.
The fact that St. Pe had a preexisting deformity of his left leg does not eliminate his right to compensation, even though he was more susceptible to injury. An employer takes an employee as he finds *642 him and is liable for compensation even when the disabling accident was such only because of a preexisting disorder in the employee. See Williams v. Liberty Mutual Insurance Co., supra. Causation between an accident and disability may be sustained by other than positive medical proof that a preexisting condition or a particular organ has been affected by the incident. Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969). The issue is not the precise change in the diseased organ but, rather, the effect on a plaintiff's overall physical condition and ensuing disability. Where there is proof of an accident and a following disability without any intervening cause, it is presumed that the accident caused the disability. See Bertrand v. Coal Operators Casualty Co., supra.
After considering the medical and lay testimony, we find that plaintiff was an able-bodied worker capable of performing physical labor prior to March 8, 1974 and conclude that the accident on that date totally and permanently disabled plaintiff.
For the foregoing reasons the judgment of the district court is affirmed.
AFFIRMED.
STOULIG, J., concurs.
REDMANN, J., dissents.
STOULIG, Judge, concurring.
I concur.
I am of the opinion that the medical testimony preponderates in favor of the conclusion that the plaintiff's disability at the time of trial was not causally related to the trauma nor did the injury cause an aggravation of a pre-existing pathological condition but rather was the result of his military service-connected injury. However, there is sufficient lay testimony to support the trial judge's determination of a job-related total and permanent disability. Therefore, in the absence of manifest error I must concur.
REDMANN, Judge, dissenting.
The evidence, medical and lay, does not support a conclusion that plaintiff's total and permanent disability arose from jobconnected injury.