352 So.2d 669 (1977)
James D. CRAWFORD
v.
AL SMITH PLUMBING & HEATING SERVICE, INC. and State Farm Fire and Casualty Co.
No. 59787.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*671 Val A. Schaff, III, Schaff & Currier, New Orleans, for plaintiff-applicant.
James L. Donovan and Daniel R. Hynes, Porteous, Toledano, Hainkel & Johnson, New Orleans, for defendants-respondents.
MARCUS, Justice.
Plaintiff, James D. Crawford instituted suit for workmen's compensation benefits against his employer, Al Smith Plumbing & Heating Service, Inc., and its insurer, State Farm Fire and Casualty Company, for an injury producing permanent total disability. His alleged disability resulted from an injury to his back caused or aggravated by an accident arising out of and in the course of his employment as a roofer with defendant company. Plaintiff also sought penalties and attorney fees against the insurer.
The trial judge, while finding that plaintiff may be unable to resume the work he was performing prior to the accident without some discomfort, rejected plaintiff's contention that he was permanently and totally disabled. Instead, compensation benefits were awarded at the rate of $65 per week for a period of fifty-two weeks. Statutory penalties and attorney fees were denied. Plaintiff appealed.
On original hearing before a panel of three judges of the court of appeal, two judges concluded that the judgment of the trial court should be amended to award plaintiff permanent and total disability benefits; one judge dissented from that view. Therefore, in accordance with La.Const. art. 5, § 8(B), it was ordered that the case be reargued before a panel of five judges of the court. After reargument, the court of appeal, by a vote of three to two affirmed the judgment of the trial court, finding that plaintiff was not permanently and totally disabled despite the "many congenital and degenerative defects of his spine."[1] We granted certiorari to review the correctness of this judgment.[2]
The record reflects that plaintiff, James D. Crawford, is a thirty-four year old family man who has worked as a roofer since the age of eighteen. He started as a helper and worked his way up to mechanic, the highest position in his craft. During his sixteen years as a roofer, plaintiff suffered only one previous injury (1971) which was slight and of short duration. On December 2, 1974, while lifting an eighty-five pound bundle of shingles on a job, plaintiff felt something "pop and pull" in his back. He fell backward onto the roof where he was working and the shingles landed on his chest. Plaintiff testified that he felt "terrific pain" in his neck, back and legs and could not move. He was taken to Ochsner Foundation Hospital where he was seen in the emergency room. Examination revealed bilateral lumbar muscle spasm with flattening of the lumbar lordosis. Plaintiff was x-rayed, given pain pills and muscle relaxants and sent home to use local heat and bed rest.
Plaintiff remained in bed at home taking the medication prescribed. On December 9, 1974, he was seen by his family physician, Dr. Charles J. Ganucheau,[3] who found marked spasm in plaintiff's cervical and lumbosacral spine. X-rays revealed congenital defects in the cervical and lumbar spine, consisting of a fusion of C-1 and C-2 and an apparent spina bifida occulta (incomplete union of the spinious process). According to Dr. Ganucheau, the fusion of C-1 and C-2 would cause restriction in the neck and the spina bifida occulta could weaken a person's back and make it more susceptible to injury. Physiotherapy consisting of ultra sound with massage was prescribed; plaintiff was treated continuously until August 4, 1974, at which time Dr. Ganucheau released him considering that he had achieved as much benefit as he could give him. It was his impression that *672 plaintiff was under the care of an orthopedic doctor at the time. Dr. Ganucheau expressed the opinion that plaintiff should not return to the same type of work he performed prior to the accident. He admonished plaintiff not to do any heavy lifting.
Dr. Dunn saw plaintiff on December 20, 1974. It was his impression at that time that plaintiff had a degenerative disc disease of L5-S1 with a superimposed acute sprain. While he gave him permission to return to work, he warned him to be careful about lifting with his back and to try to do all lifting with his legs. He instructed plaintiff to return to consult him in the future if he experienced further difficulty. Plaintiff returned on April 29, 1975, with complaints of pain in his head, neck, back and lower extremities. Dr. Dunn considered it unethical to treat plaintiff while he was under the care of other physicians and advised plaintiff to return to Drs. Ganucheau and Byram.
Plaintiff was seen by Dr. George N. Byram on February 20, 1975, at the request of the insurance company. Dr. Byram found moderate spasm in the sacral area of the spine and diagnosed plaintiff's condition as a cervical and lumbar strain with congenital fusion of the cervical vertebrae. Dr. Byram stated that plaintiff's congenital defects of the spine would not be painful in themselves but would render plaintiff more susceptible to injury. Plaintiff was last seen by Dr. Byram on May 23, 1975, at which time he was still in pain. Nonetheless, he was released to return to work on June 1, 1975, but was warned that he might continue to have discomfort in his back if he did any lifting or prolonged stooping. Dr. Byram advised plaintiff to consult him again if necessary.
Plaintiff's testimony was to the effect that he had been in extreme pain since the accident. He admitted having performed some minor painting and repair jobs, not requiring heavy labor, to support his family. Plaintiff testified that he earned $200 per week prior to the accident. Plaintiff's testimony relative to his suffering from pain and his inability to do heavy work was corroborated by a number of lay witnesses.
It is not disputed that plaintiff was injured by accident arising out of and in the course of his employment. The only issues are whether plaintiff is permanently and totally disabled as a result of the accidental injury and, if so, whether the insurer's failure to pay disability benefits was arbitrary, capricious, or without probable cause thereby subjecting it to statutory penalties and attorney fees.
The pertinent question to be answered in the resolution of whether plaintiff is permanently and totally disabled is whether the accident has changed plaintiff's condition so as to render him unfit for his former employment. Parks v. Ins. Co. of N. America, 340 So.2d 276 (La.1976); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969). An employer takes an employee as he finds him and is liable for compensation even when the disabling accident was such only because of a pre-existing disorder in the employee. St. Pe v. H. P. Foley Elec. Co., 341 So.2d 639 (La.App. 4th Cir. 1977); Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3d Cir. 1976). It is also well settled that workmen's compensation is payable when an occupational accident aggravates or accelerates a pre-existing condition and produces disability. Chism v. Kaiser Aluminum & Chemical Corporation, 332 So.2d 784 (La.1976); Johnson v. Travelers Ins. Co., 284 So.2d 888 (La.1973). Moreover, it has been consistently held that the law providing for permanent total disability benefits (La.R.S. 23:1221(2)) does not contemplate that an injured workman is required to return to his regular work if he is unable to perform that work without substantial pain or when it will materially increase the hazard to his health and safety or to the health and safety of his employees. Williams v. Hudson, 261 La. 959, 261 So.2d 629 (1972); Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969); St. Cyr v. Industrial Metals of the South, Inc., 341 So.2d 643 (La.App. 4th Cir. 1977); Loyd v. Atlas Const. Co., 341 So.2d 1245 (La.App. 1st Cir. 1976), cert.
*673 denied 344 So.2d 4 (La.1977). In each case, it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Tantillo v. Liberty Mut. Ins. Co., 315 So.2d 743 (La.1975).
A careful review of the record convinces us that plaintiff is permanently and totally disabled within the intendment of the workmen's compensation law. In reaching this conclusion, we are impressed by the fact that plaintiff was employed as a roofer for some sixteen years prior to the accident, reaching the highest level of his craft, without having had any previous injury except on one occasion and then the injury was only slight and of short duration. Moreover, plaintiff's job as a roofer requires heavy lifting and frequent stooping. The accident that caused plaintiff's injury was substantial and could have easily damaged his back sufficiently to cause the pain about which he complains. The medical evidence is generally to the effect that plaintiff's congenital spinal defects are of such a nature as to cause restriction in his neck and to make his back more susceptible to injury. Dr. Ganucheau did not consider that plaintiff should return to his former employment as a roofer. While Drs. Dunn and Byram opined that plaintiff could return to work, their recommendations were not without qualifications. The lay testimony supported plaintiff's claim that he was unable to return to his former employment without substantial pain. Accordingly, we are convinced that plaintiff has established by a preponderance of the evidence that he would have to work in substantial pain in the performance of his duties as a roofer and that the work-related accident either caused this disability or aggravated the pre-existing congenital spinal defects in plaintiff's back so as to produce his present disability. Hence, plaintiff is entitled to permanent total disability benefits.
However, plaintiff's prayer for penalties and attorney fees must be rejected. La.R.S. 22:658 provides for the imposition of penalties and attorney fees when the failure to pay workmen's compensation benefits "is found to be arbitrary, capricious, or without probable cause." The penalty provision is stricti juris and should be imposed only in those instances in which the facts negate probable cause for nonpayment. Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974). When an insurer's termination of compensation is based upon competent medical evidence, the action is not arbitrary and capricious. Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3d Cir. 1974). In the instant case, the insurer relied upon the medical reports of Drs. Dunn and Byram in terminating benefits on June 12, 1975. These reports were to the effect that plaintiff could return to work. Moreover, Dr. Ganucheau had not submitted a medical report to the insurer at the time. Hence, we are unable to say that defendant insurer acted arbitrarily, capriciously or without probable cause in its failure to pay permanent total disability benefits.

DECREE
For the reasons assigned, the judgment of the court of appeal is amended to award workmen's compensation benefits for permanent total disability at the rate of $65 per week from December 2, 1974, for a period not exceeding five hundred weeks, with legal interest on each installment from due date until paid, subject to a credit for all payments made by defendants; judgment of court of appeal is affirmed in all other respects; all costs of these proceedings are assessed against defendants.
DIXON, J., concurs in part and dissents in part with reasons.
SUMMERS, Justice, dissenting.
On this purely factual case I would not overrule the trial court and Court of Appeal. See 344 So.2d 63.
DIXON, Justice (concurring and dissenting).
I concur in the total and permanent disability finding, but dissent from the failure to award penalties and attorney's fees.
NOTES
[1] 344 So.2d 63 (La.App. 4th Cir. 1977).
[2] 346 So.2d 215 (La.1977).
[3] Medical evidence consisted of the testimony at trial of Dr. Charles J. Ganucheau, general practitioner; deposition and written reports of Dr. George N. Byram, orthopedic surgeon; and answers to interrogatories and written reports of Dr. A. William Dunn, orthopedic surgeon.