KLIEBERT, Judge.
This is an appeal from a judgment dismissing the plaintiff suit for total and permanent disability benefits under the provisions of R.S. 23:1221(2) of the Workmen’s Compensation Act.
The plaintiff-appellant, Jerome Wool, Sr., was employed by the Parish of Jefferson as a heavy equipment operator earning $7.39 per hour. On August 29, 1978, while getting down from a bulldozer, he struck his left knee, injuring same. As a result, he was away from work for five months, including time to have surgery performed on the knee. He then returned to work in his *1199 regular capacity as a heavy equipment operator. After approximately eight months at work, additional problems developed with the knee causing him to miss work between October 19,1979 and May 19,1980. When he returned to work in May, 1980, he no longer performed the duties of a heavy equipment operator. Instead, he was given a job in the weed control department. The work consisted of driving a manual shift pick-up truck to check vacant lots for weed growth, taking pictures of the lots, measuring the height of the weeds and making a report of his findings. Plaintiff continued at this work for approximately four months. He then informed his superiors that he could no longer operate the manual shift in the pick-up truck without pain. His employer then furnished him with a pick-up truck equipped with an automatic transmission. Up to the time of trial, plaintiff continued to work with the weed control department, driving to an average of 16 locations per day. The salary he received in this job was the same as that for a heavy equipment operator. As the result of general increases in salaries since his injuries, he was earning more at the time of trial than he earned at the time of his injuries. From the time of the injury to the time of trial, compensation benefits of $5,812.00 were paid to plaintiff and $3,254.37 of medical expenses were paid on his behalf.
Plaintiff contends he suffers from a tightness in the knee and sharp burning pain when he uses the knee. He is required to rest between each location he visits. On occasions, he soaks the knee in hot water to relieve the tightness. He continues to work in pain because he is trying to reach full pension retirement.
Mr. Wool is 59 years of age and progressed only to the seventh grade in grammer school. His “IQ” is below average. He has been employed by the Parish of Jefferson for twenty-five years. Prior to his employment with the Parish, he worked as a carpenter’s assistant in a shipyard and as a produce clerk in a food store.
Ms. Janet Mayeux, an expert in the evaluation of people who have suffered injuries, with the aim of finding what types of employment are available in the job market, had evaluated the plaintiff and was called on his behalf. In pertinent part, she testified as follows:
Q. Based upon your interviews with Mr. Wool and the test that you performed and the information made available to you, could you reach any kind of an opinion with regard to his employability as to the open labor market?
A. Yes, sir.
Q. What was that opinion that you reached?
A. My opinion was that he is employable, and that he is presently doing a satisfactory performance on his job right now. If he had to re-enter the labor market at this time, his employment opportunities would be limited due to his skills, his physical restrictions, age, and education.
She also listed the kind of work Mr. Wool could do as a security guard, dispatcher, cashier, hay cutter, alarm monitor and generally other unskilled types of work. Although she testified that jobs as a security guard and dispatcher were available in Jefferson Parish, she had made no effort in Mr. Wool’s case to determine if the jobs were presently available for him because Mr. Wool was not unemployed. In her opinion, Mr. Wool could perform the work required for the above listed employment as well as the one he was performing for the Parish of Jefferson even with the physical limitations Dr. Byram considered him as having.
Dr. George Byram diagnosed the plaintiff’s injury as “a Baker’s cyst of the left knee with possible internal derangement”. Following treatment, he performed an ar-throscopy and arthrotomy of the left knee with the removal of the medial meniscus and the Baker’s cyst. In his opinion, the Baker’s cyst predated the injury and at the time of the injury the meniscus along with the articulate surface were degenerative. He believed the accident tore a weakened degenerated meniscus. After the injury, *1200 Wool developed a mild bowleg condition from the progressively degenerative (arthritic) condition of the knee. His arthritic condition was aggravated by the injury. Periodically, Mr. Wool returned to Dr. By-ram complaining of pain in the knee. He had made notes in his record that if the pain and degenerative condition persisted, and the bowleg condition persisted, he would have to consider an osteotomy. He described the osteotomy as follows:
“It is a procedure that is done for usually degenerative changes along most commonly the medial side of the knee joint where a wedge of bone is removed just beneath the knee joint to try to eliminate the bow-leg condition to actually create a mild knock-knee form, to relieve some of the pressure on the medial side of the joint and shift it to the lateral compartment if that side of the joint is in good condition.”
With respect to Mr. Wool’s pain, he testified as follows:
Q. Were you convinced at this time that he was genuine in his complaints to you regarding pain?
A. Yes.
Q. Based on the physical findings and following him in your office, would it be unusual for you to medically conclude that he was in pain on a continuous basis?
A. Yes. I think he always has some pain, more often with activities. I think it is aggravated by activities. He may not have pain at rest, to clarify that a little bit. Sometimes people do. It varies from one individual to another.
In his opinion, Mr. Wool had a 15% anatomical and functional disability of the left leg. He believed Mr. Wool was working with pain but he could not assess the degree of pain. At no time did he advise Mr. Wool to stop working because he believed he should stay active but within the realm of his pain tolerance.
In answer to a specific request from Ms. Mayeux, in December, 1980, Dr. Byram answered specific questions for use in evaluating Mr. Wool’s functional capacities as follows: “With rest Mr. Wool could sit 8 hours a day, stand 6 hours and walk 5 hours. He could not carry above 50 pounds, but could occasionally (33% of the time) lift up to 100 lbs. and could only occasionally squat, crawl and climb, but could not use his left leg to operate foot control mechanisms.” No pain medication other than aspirin was prescribed or being taken by the plaintiff.
 Under the wording of R.S. 23:1221 prior to 1975 and jurisprudence formed thereunder, Mr. Wool would be permanently and totally disabled because he is no longer able to engage in the same (i.e., heavy equipment operator) work as that in which he was employed at the time of the injury. In an apparent effort to classify as partially disabled many claimants who were formerly classified as permanently and totally disabled despite the claimant’s ability to earn substantial wages at a different occupation, the 1975 legislature amended R.S. 23:1221(2) to define permanent and total disability as the inability to “... engage in an occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of the injury, was particularly fitted by reason of education, training and experience ...” Since this enactment, our Supreme Court adopted the “odd lot” doctrine developed in states with a statutory definition of permanent total disability similar to ours. See Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). Under the “odd lot” doctrine, if a claimant’s pain appreciably limits the type of work available to him and greatly diminishes his ability to compete in the labor market, he is classified as permanently disabled unless realistically there are jobs available to him in which the claimant can earn wages. However, where the claimant cannot perform the same work he was engaged in at the time of the injury because it causes him substantial pain, the claimant is classified as partially disabled where realistically there are jobs available which he can perform without substantial *1201 pain. Lattin v. Hica Corp., 395 So.2d 690 (La.1981).
Here, Wool was unable to perform the work of a heavy equipment operator without substantial pain. However, he is otherwise able to work and is not so disabled as to make him a marginal employee. In fact at the time of trial, he was performing light work, albeit with some pain.
The trial judge concluded the plaintiff was not permanently and totally disabled within the meaning of R.S. 23:1221(2). With that conclusion we agree. Nevertheless, under the recent decision of the State Supreme Court, i.e., Allor v. Belden, 393 So.2d 1233 (La.1981); Dusang v. Beck Builders, Inc., 389 So.2d 367 (La.1980); Schouest v. J. Ray McDermott & Co., Inc., 402 So.2d 699 (1981), this does not mean plaintiff is precluded from receiving compensation benefits. Under La. R.S. 23:1221(3) as amended, an employee who is unable “to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training and experience ...” is classified as partially disabled. This statutory provision also fixes the compensation rate for partial disability at 66%% of the difference between the wages the employee was earning at the time of injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages. Further, under this statutory provision (i.e., R.S. 23:1221[3]) for any week during which the employee is paid any compensation under this subdivision, the employer is entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under the subdivision. However, for any week during which the employee receives no compensation because his earnings during the week exceeded the amount of compensation benefits he would be entitled to for the week, the employer is not entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under the subdivision.
Under the circumstances here, we conclude the plaintiff is permanently partially disabled and, hence, entitled to compensation benefits under the provisions of R.S. 23:1221(3).
The evidence in the record is insufficient for this court to fix the appropriate rate and duration of the compensation to which plaintiff may be entitled. Also, under R.S. 23:1203, plaintiff is entitled to receive reimbursement for his medical expenses incurred subsequent to the trial. The appropriate rate and duration of the compensation is to be fixed by the trial court, with the appropriate credit for those weeks in which actual wages are earned.
We do not conclude, however, that plaintiff is entitled to penalties and attorney fees. As was noted by the Supreme Court in Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669, at 673 (La.1977):
“ . . . The penalty provision is stricti juris and should be imposed only in those instances in which the facts negate probable cause for non-payment ...”
There is no evidence in the record to show that the defendant acted arbitrarily or capriciously in its method of paying compensation.
For the reasons above stated, the opinion of the trial court is reversed and Jerome Wool is decreed to be permanently partially disabled. The case is remanded to the trial court for entry of a judgment in favor of the plaintiff consistent with this opinion, with, the trial judge determining the appropriate rate and duration of compensation for partial disability, and the medical expenses for which reimbursement is owed. All costs to be paid by appellee.
REVERSED AND REMANDED.