424 So.2d 1138 (1982)
Clifton E. CHISHOLM
v.
L.S. WOMACK, INC.
No. 82 CA 0260.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
*1139 Hobart Pardue, Springfield, for plaintiff-appellee.
Michael Caldwell, Baton Rouge, for defendant-appellant.
Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is a suit for workmen's compensation benefits and statutory penalties alleging that the plaintiff was totally and permanently disabled in a job related accident. The trial court rendered judgment in favor of the employee for compensation benefits for total temporary disability in the sum of $163 per week for the period of February 18, 1981 (the date of the alleged accident), through November 20, 1981 (the date of trial), a period of 39 weeks and 2 days, and assessed the employer with statutory penalties which included an attorney fee of $3,500. This suspensive appeal followed.

I. FACTS
On February 18,1981, the employee, Clifton E. Chisholm, was employed as a "pusher" of a five man crew with L.S. Womack, Inc. (Womack) and was engaged in cleaning a mud tank located in Morganza, Parish of Pointe Coupee, Louisiana. The men would enter the tank and clean for only five minutes at a time because of the noxious fumes inside the tank. Chisholm contends that he injured his back when he slipped on an iron rod on the inside of the tank. The men terminated work at 6:00 A.M. and Chisholm went home and slept until 2:00 P.M. He subsequently went to the Baton Rouge General Hospital for treatment on the evening of February 18, 1981, and remained in the hospital until he was discharged on February 21, 1981. Womack was contacted by the hospital to confirm insurance coverage on Chisholm and it refused to do so. Subsequently, Womack also declined to pay workmen's compensation benefit payments to Chisholm and this suit followed.

II. WAS THERE A COMPENSABLE ACCIDENT?
At the trial, Chisholm testified that just prior to 6:00 A.M. on February 18, 1981, he slipped on an iron rod on the inside of the mud tank, but caught himself to keep from falling to the bottom of the tank. He felt a burning sensation in his back at that time. On direct examination, Chisholm contended that he was alone in the tank when he slipped. Chisholm was recalled to the stand and testified that possibly William Morris, a fellow employee, was in the tank with him at the time of the incident. Chisholm went directly from work to his home and slept from 6:30 A.M. until approximately 2:00 P.M. His back bothered him that afternoon and about 6:00 P.M., he went to C.J.'s bar to get some cigarettes and report the accident.[1] At C.J.'s bar, Chisholm's wife called *1140 the dispatcher for Womack to report Chisholm's injury and to advise that he was going to the hospital for treatment. Chisholm stayed at the bar for another thirty minutes to an hour, but did not have anything to drink. He met another fellow employee, Mike Welch, at the bar and gave him some jumper cables to start his truck. Chisholm then left C.J.'s and went to the Baton Rouge General Hospital for treatment. Chisholm testified that he has not worked or attempted to work since that time because of pain in his back.
William Morris, a fellow employee, testified that he was in the tank with Chisholm and observed him slip on the day in question.
Gary O'Neil testified that he was a stockholder of and house counsel for Womack. The first notice that Womack got of the accident and that Chisholm was in the hospital was when the hospital called Womack's office to verify insurance coverage. At that point, Womack immediately instituted an investigation into the facts of the matter. O'Neil interviewed William Morris as part of this investigation. Morris advised him that he did not see the accident. O'Neil also interviewed the other members of Chisholm's work crew and none were aware of any accident or injury. O'Neil reviewed the dispatcher's log for the time period in question and there was no record of Mrs. Chisholm calling the dispatcher to report the accident or advising that Chisholm was going to Baton Rouge General Hospital for treatment.
Mike Welch, another fellow employee, testified that he saw Chisholm at C.J.'s bar (also known as Bubba's) between 6:30 and 7:00 P.M. on the night in question. Chisholm was drinking little Miller beers and playing a bowling machine. Welch asked Chisholm to help him get his truck started. Chisholm obtained some jumper cables and helped Welch. Welch left around 8:00 P.M. and Chisholm was still there. Two other fellow employees, Albert Hutchinson and John Doss, were also there.
Albert Hutchinson testified that on the evening of February 18,1981, he saw Chisholm drinking beer in Bubba's Lounge in Port Allen, Louisiana. Chisholm was in the bar when he arrived and he was still there when Hutchinson left two hours later around 9:30 or 10:00 P.M. During the time that Hutchinson was in the bar, he observed Chisholm shoot some pool and fall off of a bar stool onto the floor of the bar. Hutchinson further testified that after February 18, 1981, and prior to the trial, he saw Chisholm move furniture and a bathtub and helped him to move scrap iron and a V-8 engine block. Hutchinson testified that in the latter part of October, 1981, Chisholm told him that he was making $50 per day working for a plumber.
Joseph Eugene Morel testified that he was an insurance adjuster who investigated the Chisholm claim for the insurer of Womack. During the course of his investigation, he took a tape recorded statement from William Morris, in which Morris stated that he had been in the tank with Chisholm holding a flashlight, that he observed Chisholm at all times, and that he did not see Chisholm slip. On November 11 and 12, 1981, Morel conducted surveillance on Chisholm. On both mornings, Chisholm left his home just before 7:00 A.M. dressed in work clothes and drove off. Morel attempted to follow him, but lost him both days.
Mrs. Bobbie Chisholm, the wife of the employee, testified that she went to C.J.'s bar with Chisholm and called the Womack dispatcher to notify him of the injury and that Chisholm was proceeding to the hospital for treatment. She saw Mike Welch at the bar and Chisholm helped him start his vehicle. Chisholm was not drinking in the bar and Hutchinson was not present at the bar. When they left C.J.'s, she went with her husband to the Baton Rouge General Hospital and arrived at about 9:45 P.M.
In a workmen's compensation action, the employee bears the burden of establishing by a preponderance of the evidence that he received an injury arising out of and in the course of his employment. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978); Yokeum v. ITT Henze Service, 396 So.2d 611 (La.App. *1141 1st Cir.1981), writ denied 406 So.2d 625 (La. 1981). An appellate court cannot reverse a trial court factual determination unless an examination of the record as a whole demonstrates that the trial court was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Williams v. Offshore Food Service, Inc., 417 So.2d 475 (La.App. 1st Cir.1982). Although there are inconsistencies in and contradictions to the evidence presented by the plaintiff, and although we may have reached a different conclusion on the facts were we sitting as a trial court, after considering the record as a whole, we cannot say that the trial court was clearly wrong in determining that the plaintiff proved a work related accident by a preponderance of the evidence.

III. DISABILITY
In 1975, Dr. Thomas B. Flynn performed surgery on Chisholm and removed a disc from the area of his fifth lumbar vertebra. As a result of this surgery, Chisholm had a 10-15% disability. After discharge from treatment, Chisholm could do any type of work provided it did not require lifting of more than 50 pounds.
On February 19, 1981, Dr. Flynn examined Chisholm at the Baton Rouge General Hospital. Chisholm gave a history of slipping and falling at work while cleaning a tank. Chisholm complained of a stinging sensation in his back and left hip, shooting pains in his left leg and the left leg giving away. Dr. Flynn had X-rays made of Chisholm's back which showed evidence of the prior disc surgery, narrowing of the innerspace where the surgery was performed, and "no other changes of significance." Dr. Flynn found no evidence of muscle spasm. A neurological examination was normal. Chisholm complained of pain on the straight leg raising test at 60 degrees. Dr. Flynn felt that the shooting pains in the leg possibly could be caused by irritation of the nerve root (sciatica). An electromyelogram and a lumbar myelogram were performed and the results were normal, indicating no nerve root irritation. Dr. Flynn prescribed traction and physical therapy. Chisholm left Baton Rouge General Hospital on February 21, 1981.
Dr. Flynn saw Chisholm again on March 17, 1981, and Chisholm's symptoms were unchanged. Dr. Flynn saw Chisholm again on May 25, 1981, and was then of the opinion that he should be rehospitalized for further diagnostic studies to determine the exact nature of his problems.
On August 10, 1981, Chisholm was examined by Dr. Herbert K. Plauche'. Chisholm gave a history of slipping down a steel bar inside a mud tank and feeling a burning pain in his lower back. Chisholm complained of low back pain radiating into the left hip down to the knee, accompanied by weakness of the entire left leg. Dr. Plauche' found no neurovascular deficit in either leg, but did note a moderate degree of paraspinous muscle spasm in the lumbosacral area bilaterally. Straight leg raising tests produced low back pain, but no sciatica. X-rays of the lumbosacral spine and pelvis revealed no acute bone or joint abnormalities. Dr. Plauche' recommended a complete neurological workup and that Chisholm engage in no strenuous physical activity until the workup was completed.
On September 10, 1981, Chisholm was examined by Dr. Stephen Wilson. He gave a history of slipping in some mud in a tank while at work and injuring his lower back. Dr. Wilson's examination revealed no swelling or inflammation in the low back area. Chisholm complained of some pain on forward flexion and deep palpation of the lumbosacral spine area. There was no evidence of muscle atrophy or muscle weakness and there was a good range of motion in all of the joints. Straight leg raising tests were negative in the sitting position. X-ray examination of the lumbosacral spine showed no evidence of fracture or dislocation, and the alignment of the vertebra was satisfactory. Dr. Wilson diagnosed Chisholm's problem as a musculo-ligamentous strain to the lumbosacral region. Dr. Wilson observed that he could "find nothing on physical examination or x-ray examination as to why this patient continues to have such severe difficulty." Dr. Wilson found no *1142 form of permanent disability and opined "that whether or not he returns to any form of gainful employment has a great deal to do with his motivation and desire."
Chisholm was examined by Dr. Flynn on September 15, 1981, and subsequently admitted to Our Lady of the Lake Hospital in Baton Rouge, Louisiana, on September 19, 1981, for further diagnostic studies. His neurological examination was normal. A second myelogram was performed, and the results were also normal. Dr. Flynn found no evidence of scar tissue formation or recurrent disc herniation. Chisholm was released from the hospital on September 21, 1981.
Chisholm was again examined by Dr. Flynn on October 6,1981. At that time, Dr. Flynn described his examination of Chisholm as "essentially normal". Dr. Flynn was of the opinion that Chisholm should not lift over 40-50 pounds or work on heavy equipment. Dr. Flynn indicated that Chisholm's physical condition as of October 6,1981, was substantially the same as his physical condition when he was discharged from his operation in 1975. Dr. Flynn described Chisholm's condition as an aggravation of a pre-existing back condition with no objective evidence of new injury. On October 6, 1981, the work limitations placed on Chisholm were the same as those imposed on him when he was discharged in 1975.
On November 17, 1981, Chisholm was examined by Dr. Arlo Chavers. Dr. Chavers furnished the following report on this examination:
"The patient tells me that he is having continued disabling back and leg pain. He has a normal examination. He tells me that he is unable to perform any type of activity of any sort. However, he has heavily stained and calloused hands indicating very heavy manual labor in the recent past. No return appointment given."
A claimant in a workmen's compensation proceeding bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. Elie v. St. Paul Fire & Marine Insurance Company, 408 So.2d 297 (La.App. 3rd Cir.1981); Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1st Cir.1977). The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La. 1977). Disability is compensable only if it results from a work-related accident. Simpson v. S.S. Kresge Company, 389 So.2d 65 (La.1980).
The evidence indicates that Chisholm is not permanently and totally disabled in the purview of La.R.S. 23:1221(2). Dr. Flynn testified that the work limitations on Chisholm in October of 1981 were essentially the same as those when he was discharged from his operation in 1975. After his discharge in 1975, Chisholm was gainfully employed and thus in October of 1981, he again was able to engage in a gainful occupation for wages.
Chisholm was not partially disabled by the accident of February of 1981 within the purview of La.R.S. 23:1221(3).[2] Dr. Flynn testified that in October of 1981, Chisholm was able to perform the same employment duties that he was customarily engaged in prior to the time that he was injured in February of 1981. The work limitations placed upon him prior to February 18, 1981, were essentially the same as those placed upon him post October 6, 1981.
We believe that the evidence of record indicates that Chisholm was temporarily totally disabled during the period of February 18, 1981, until October 6, 1981. According to the testimony of Dr. Flynn when he last examined Chisholm in October of 1981, the aggravation of the pre-existing back condition which occurred in February of 1981, was essentially resolved. In view of this, the trial judge was clearly wrong in allowing benefits for temporary total disability until the date of trial on November 20, *1143 1981. The judgment will be amended accordingly.

IV. STATUTORY PENALTIES
The trial judge assessed statutory penalties, including a $3,500 attorney fee, pursuant to La.R.S. 23:1201.2. That statute authorizes penalties to be levied against an employer who arbitrarily, capriciously, or without probable cause fails to make compensation benefit and medical payments within sixty days after receipt of notice of the claim. Because this statute is penal in nature, it should be utilized only in those instances in which the facts negate probable cause for nonpayment. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982). Where there is a serious defense presented in good faith, the assessment of the statutory penalties is not appropriate. Furtado v. Alton Ochsner Medical Foundation, 413 So.2d 528 (La.App. 4th Cir.1982), writ denied 420 So.2d 171 (La.1982).
Our review of the record shows that Womack asserted a serious defense in good faith on the issue of whether or not a compensable accident had occurred. The testimony of Chisholm about slipping in the mud tank was contradicted by Hutchinson who claimed he saw him fall off of a bar stool onto the floor. The testimony of William Morris that he observed Chisholm slip in the mud tank was contradicted by statements that he gave to Gary O'Neil and Eugene Morel. The statement by Mrs. Chisholm that she called in to report the accident to the Womack dispatcher was contradicted by the fact that the Womack records did not reflect that the call was made. Chisholm testified that he was not drinking prior to going to the hospital, but both Mike Welch and Hutchinson testified that they observed him doing so. In view of these serious factual disputes on the issue of whether or not a compensable accident occurred, the assessment of statutory penalties is not appropriate and is reversed.

V. CONCLUSION
For the foregoing reasons, the judgment of the trial court granting compensation benefit payments of $163 per week for total temporary disability from February 18, 1981, to November 20, 1981, is amended to terminate those payments on October 6, 1981. The trial court judgment awarding medical bills and expenses in the sum of $584.25 is affirmed. The trial court judgment assessing statutory penalties is reversed. The trial court erroneously granted legal interest from the date of judicial demand until paid on the judgment awarding weekly compensation benefit payments. This portion of the judgment is amended to award legal interest on each weekly compensation payment from its date due until paid. Crockett v. St. Paul Insurance Company, 413 So.2d 949 (La.App. 1st Cir.1982). Since the medical bills and expenses claimed in the trial court were due and payable prior to the time that suit was filed, the appellee is entitled to legal interest thereon from date of judicial demand until paid. The appellant is cast for all costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] Chisholm testified that he did not have a telephone at his home.
[2] No evidence was presented at the trial to show the employees weekly wages. The parties stipulated that the maximum benefits were $163 if disability were found.