| THIBODEAUX, Judge.
Defendants-appellants, Acadia-St. Landry Guest Home and Guarantee Mutual Life Company (hereinafter “Acadia”), appeal the judgment of the Office of Workers’ Compensation. The workers’ compensation judge found that the plaintiff-appellee, Ms. Hilda Board Charles, satisfied her burden of proving a prima facie entitlement to supplemental earnings benefits. The workers’ compensation judge also awarded a penalty of twelve percent on past due sums, or $2,000, whichever is greater, and an attorney fee of $5,000. Ms. Charles also filed an appeal asking this court to determine whether the amended judgment dated, November 1, 2000, was valid and, if so, what is the proper amount of her supplemental earnings benefits. Ms. Charles also appeals asking for an increase in the $5,000 attorney fee award.
We affirm the award of supplemental earnings benefit, reverse the award of a penalty under La.R.S. 23:1201.2, increase the attorney fees award for work performed at the trial level to $12,500 and award an attorney fee of $2,500 for work at the appellate level.
I.

ISSUES

The issues presented for review are:
(1) whether the workers’ compensation judge was manifestly erroneous in finding that Ms. Charles satisfied her burden of proving entitlement to supplemental earnings benefits and finding that Acadia failed to present sufficient evidence to establish both job availability and Ms. Charles’ wage earning capacity?
(2) whether the workers’ compensation judge correctly applied the requirements of Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551, to vocational rehabilitation activities that occurred prior to the rendition of the Banks opinion?
(3) whether the workers’ compensation judge was manifestly erroneous in finding Acadia liable for a penalty and attorney fees? and,
(4) was the amended judgment dated November 1, 2000 a valid judgment?
II.

FACTS

Ms. Charles sustained a neck injury while in the course and scope of her em *1209 ployment with Acadia on June 8, 1994. Ms. Charles and several other people were attempting to lift a patient, who weighed in excess of 300 pounds, from the floor. Dr. Jack Hurst performed a C5-6 cervical anterior discectomy and fusion on October 24, 1994. Dr. Hurst discharged her from his care on January 25,1995.
Ms. Charles continued to have pain and was referred by Dr. Steven Snatic to Dr. Robert Franklin, a specialist in physical medicine. Dr. Franklin treated Ms. Charles until December 17, 1996. Dr. Franklin was of the opinion that Ms. Charles reached maximum medical improvement on April 9, 1996, and was fit for light duty employment. Vocational Rehabilitation Services revealed several positions which were presented to Dr. Franklin for his approval. On June 3, 1996, Dr. Franklin gave his approval to these positions while meeting personally with Mr. William Stampley, the vocational counselor assigned to the file.
In August of 1996, Acadia terminated weekly compensation benefits to Ms. Charles. A claim was filed on her behalf.
_JjThe workers’ compensation judge found that Ms. Charles was entitled to supplemental earnings benefits, in the sum of $319.00, from August 4, 1996 and also awarded a penalty and attorney fees. The judgment was later amended to clarify the amount of supplemental earnings benefits to be paid per month. It is from this judgment that both Acadia and Ms. Charles appeal.
III.

LAW AND DISCUSSION

Supplemental Earnings Benefits
Acadia contends that the workers’ compensation judge erred in finding that Ms. Charles established a prima facie case of entitlement to supplemental earnings benefits. Supplemental earnings benefits are awarded when a work-related injury prevents the claimant from earning ninety percent of his pre-injury wages. La.R.S. 23:1221(3). Whether an employee has proved that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident is necessarily a fact and circumstance determination in which the court is mindful of the jurisprudential tenet that workers’ compensation law is to be liberally construed in favor of the claimant. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129. The amount of SEB is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity. Banks, 696 So.2d 551; La.R.S. 23:1221(3)(a).
Ms. Charles worked as the assistant director of nurses for Acadia. It was stipulated at trial that her average weekly wage prior to her injury was $564.58 per week. Ms. Charles’ pre-injury job responsibilities required that she perform LPN duties, at times, as well as in emergencies. The job analysis, submitted to Dr. RFranklin, limited lifting requirements to five pounds. However, Ms. Charles job duties required lifting of patients and, also, training new LPNs how to lift patients, which is greatly in excess of five pounds. In fact, Ms. Charles injury occurred while attempting to lift, with the aid of others, a woman weighing in excess of 300 pounds. Thus, the job analysis submitted to Dr. Franklin was inaccurate.
Also, the job analysis did not reflect Ms. Charles actual pre-injury job responsibilities. The medical evidence suggest that *1210 Ms. Charles could be expected to have problems with any employment which required her to lift patients. Ms. Charles’ former job is no longer available, as it was filled during her absence, and considering that lifting of patients cannot be avoided in her job of injury, the workers’ compensation judge did not err in finding that Ms. Charles established a prima facie case of entitlement to supplemental earnings benefits.
Once the claimant has met this initial burden of proving entitlement to SEB, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee’s or the employer’s community or reasonable geographic region. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
The Louisiana Supreme Court in Banks concluded that an employer may discharge its burden of proving job availability by establishing, at a minimum, the following by competent evidence: (1) the existence of a suitable job within the employee’s physical capabilities and within the employee’s or the employer’s community or reasonable geographic region; (2) the amount of wages that an employee with the claimant’s experience and training can be expected to earn in that |¡dob; and (8) an actual position is available for that particular job at the time that the claimant received notification of the job’s existence. Banks, 696 So.2d at 557.
The workers’ compensation judge found that Acadia failed to discharge its burden of proving job availability. Specifically, the workers’ compensation judge found three problem areas with Acadia’s evidence on job availability: (1) there was no evidence that any of the positions identified were available on the date Ms. Charles was notified of their existence; (2) only one of the positions identified conceivably paid ninety percent or more of Ms. Charles’ pre-injury wage; and, (3) the vocational rehabilitation counselor met with Ms. Charles’ treating physicians ex parte.
Mr. Stampley, the vocational rehabilitation counselor, located six jobs that were available that Ms. Charles could possible qualify for. They included two LPN positions, one in Eunice and one in Lafayette, a manager trainee position with Enterprise, a sales position with Thermax, a consultant position with Jennie Craig, and a manager trainee position with Dominos Pizza. Mr. Stampley notified Ms. Charles that the jobs were available by a certified letter. The letter was sent on May 16, 1996. The evidence presented indicates that Mr. Stampley made contact for the LPN position on May 3, 1996 with no further contacts. Contacts with the other employers were made on April 17, April 23, April 25, and May 10, 1996. It was unknown when contact with Jennie Craig was made. Other than those contacts, there were no further contacts with these possible employers. There is no indication that any of these positions were still available on May 16, 1996, the date the letter from Mr. Stampley to Ms. Charles was sent or when Ms. Charles received that letter on May 17, 1996. The Louisiana Supreme Court stated that the employer must establish that an actual position was available at the time that the claimant received notification | fiof the job’s existence. Banks, 696 So.2d at 557. Acadia has presented no evidence that any of the jobs were still available at the time Ms. Charles was notified on May 17, 1996.
Banks also requires Acadia to show the amount of wages that Ms. Charles is ex *1211 pected to earn in each possible job. Acadia must prove that the jobs paid ninety-percent or more of Ms. Charles pre-injury wage. Acadia has failed in that attempt. Mr. Stampley testified that the amount of work available, with regard to the two LPN positions that were identified, would depend upon the number of contracts the employer had for LPN work. Therefore, Mr. Stampley was unable to establish that the LPN jobs were full-time. The two LPN positions paid between $11 to $12 per hour. Thus, even if they were full time, the wage earning capacity falls short of ninety percent of Ms. Charles’ pre-injury wage. The other positions located also fall short of ninety percent of Ms. Charles’ pre-injury wage. The Thermax position could have met the ninety percent requirement but it was a sales job which is unrelated to Ms. Charles prior position as assistant director of nurses with Acadia. The wage range for the Thermax position is $35,000 to $50,000 but Ms. Charles has no sales experience and there is no indication from the potential employer what someone with no sales experience can earn.
Also, Mr. Stampley had direct oral conversations with Ms. Charles’ treating physicians in performing his rehabilitation work. Specifically, Mr. Stampley met with Drs. Robert Franklin and Steven Snatic to obtain approval for certain jobs. Oral contacts are directly prohibited under La.R.S. 23:1127 and have been held so under case law. “Contacts by an adverse party or by its representative of a treating physician will not be tolerated, as they strike at the very heart of our system of civil justice.” See generally Boutte v. Winn-Dixie Louisiana, Inc., 95-1123, p. 4 (La.App. 3 Cir. 4/17/96); 674 So.2d 299; Johnson v. Apeck Constr., Inc., 96-1283 (La.App. 3 Cir. 3/5/97); 692 So.2d 476, 481. Although this observation was in a non-workers’ compensation setting, the admonition in Boutte is equally appropriate in this case.
Thus, Acadia failed to establish the amount of wages that Ms. Charles could expect to earn. Accordingly, the finding of the workers’ compensation judge will not be disturbed.
Requirements of Banks
Acadia contends that the workers’ compensation judge erred in applying the requirements of Banks to vocational rehabilitation activities that occurred prior to the rendition of the Banks opinion. Thus, Acadia argues that it should not be held to the standards set forth in the Banks case. Acadia alleges that the Banks decision set forth new and clear standards to be followed by employers in supplemental earnings benefit cases and can only be applied prospectively. We disagree. Our supreme court in Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714, 723, cert. denied, Allstate Ins. Co. v. Louisiana Ins. Guar. Ass’n, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), succinctly distinguished between substantive, procedural, and interpretive laws as follows:
Substantive laws establish new rules, rights, and duties or change existing ones. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment, (citations omitted.)
The decision in Banks did not establish new rules, rights, and duties or change existing ones. The Louisiana Supreme Court in Banks merely interpreted La.R.S. 23:1221 which was already in existence. Interpretive cases do not create new rules, but merely establish the meaning that the statute had from the time of its enactment. *1212 |sIt is La.R.S. 23:1221, not the Banks decision, that establishes rights and duties. Jurisprudence has developed the rule that substantive laws can only be applied prospectively while laws that are procedural, remedial, or curative can be accorded retroactive effect. Banks did not change, but merely clarified, pre-existing law. Therefore, we find that the workers’ compensation judge applied the correct standard and her finding will not be disturbed.
Penalty
The workers’ compensation judge found Acadia to be arbitrary and capricious for the sudden termination of benefits to Ms. Charles. Louisiana Revised Statutes 23:1201.2 entitles a worker’s compensation claimant to reasonable attorney’s fees if discontinuance of benefit payments is found to be arbitrary, capricious, or without probable cause. Hood v. C.J. Rogers, Inc., 94-1162 (La.App. 3 Cir. 3/8/95); 654 So.2d 371. However, the workers’ compensation judge is not allowed to award a penalty under La.R.S. 23:1201.2 for the discontinuance of indemnity benefits. The Louisiana Supreme Court specifically held in Williams v. Rush Masonry, Inc., 98-2271, (La.6/29/99); 737 So.2d 41, that only attorney fees are now recoverable under La.R.S. 23:1201.2 if the employer or insurer arbitrarily discontinues payment of benefits due. We, therefore, find the workers’ compensation judge erred, as a matter of law, in awarding a penalty. Accordingly, we reverse the penalty award.
Attorney Fees
The workers’ compensation judge found that indemnity payments were terminated completely on the basis of the Thermax position. The Thermax position was not related to Ms. Charles previous employment at Acadia and the recommended vocational testing to determine suitability was not completed. Also, Mr. Stampley 1 acontacted Thermax on April 23, 1996. Ms. Charles was not notified of the possible position until May 16, 1996. Thus, it is not known whether the position at Thermax was even available at the time Ms. Charles was notified. Also, as the workers’ compensation judge correctly noted in her reasons for judgment, Acadia failed to make a “realistic determination as to what an entry level employee without prior experience or training could expect to earn.”
Accordingly, we find no manifest error in the workers’ compensation judge’s ruling that Acadia was arbitrary and capricious in terminating Ms. Charles indemnity benefits and we affirm its award of an attorney fee. Additionally, we find that the workers’ compensation judge’s award of $5,000.00 in attorney fees is inadequate and we increase that award to $12,500.00. Counsel for Ms. Charles introduced into evidence an affidavit as to the number of hours spent in preparation of this case. While we are loath to base an award of attorney fees solely on the number of billable hours, the amount of time devoted to a case is a factor to be used in determining the amount of an attorney fee award. Britton v. City of Natchitoches, 97-1038 (La.App. 3 Cir. 2/11/98); 707 So.2d 142, writ denied, 98-1203 (La.6/26/98); 719 So.2d 1057. We also base the amount of the attorney fee award on the degree of skill and ability exercised, the amount of the claim, and the amount recovered. Id. An additional factor to be considered is the worker’s ability to hire counsel. We do not exist in a vacuum, immune to the realities of the real world and the inability of a worker’s compensation claimant to find effective or adequate counsel. This is a factor that must be contemplated, considering the real world reluctance of counsel in today’s legal envi *1213 ronment to accept worker’s compensation cases. “The injured worker would effectively be denied the protection offered by the workers’ compensation statutes if he or she was unable to find an attorney to represent his or |inher interests.” Jones v. Evangeline of Natchitoches, Inc., 97-869, pp. 7-8 (La.App. 3 Cir. 12/10/97); 704 So.2d 905, 909, writ not considered, 98-0106 (La.3/13/98); 712 So.2d 864. After considering the totality of these factors, we conclude that an increase in attorney fees to $12,500.00 is appropriate for work done in the trial court. We award an additional $2,500.00 as attorney fees for work performed at the appellate level.
Valid Judgment
In her first and second assignments of error, Ms. Charles inquires about the validity of the amended judgment dated November 1, 2000, and the correct amount of supplemental earnings benefits awarded. There was a judgment rendered on September 26, 2000, wherein Acadia was ordered to pay supplement earnings benefits to Ms. Charles in the amount of $319.00. However, that judgment was not specific as to whether the $319.00 was to be paid weekly or monthly. The workers’ compensation judge issued an amended judgment signed November 1, 2000. In the amended judgment the workers’ compensation judge ordered that there be judgment in favor of Ms. Charles, and against Acadia, for supplemental earnings benefits in the sum of $1,371.70 to be paid monthly. This was a correct and valid judgment and is affirmed by this court.
IV.

CONCLUSION

For the foregoing reasons, the judgment of the workers’ compensation judge is affirmed in part, reversed in part, amended and, as amended, affirmed. Costs of the appeal are assessed to Acadia.
AFFIRMED IN PART; REVERSED IN PART; AMENDED AND, AS AMENDED, AFFIRMED.