# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-548


**TAMMI YOUNG JARDNEAUX**

**VERSUS**

**GUERNSEY HOLDINGS SDI TX HOLDINGS CO, LLC &
ZENITH INSURANCE COMPANY**

\*\*\*\*\*\*\*\*\*\*
ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 24-03886
THOMAS E. TOWNSLEY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Jonathan W. Perry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

Megan C. Gladner
Blue Williams, LLC
3421 North Causeway Blvd., Suite 900
Metairie, Louisiana 70002
(504) 830-4980
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    Guernsey Holdings SDI TX Holdings Co, LLC &
    Zenith Insurance Company

Roy Wygant
Cox, Cox, Filo, Camel, Wilson & Brown, LLC
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    Tammi Young Jardneaux

**PERRY, Judge.**

In this workers' compensation case, the employer and its workers' compensation insurer appeal the various penalties and the attorney fee awarded to the injured worker. We affirm.

## FACTS AND PROCEDURAL HISTORY

This case arose from a work accident on May 23, 2024, when Tammi Jardneaux ("Ms. Jardneaux") injured her shoulder, head, and leg as a result of her employment as a carhop at the Kinder Sonic ("Sonic").[1] Ms. Jardneaux stated that she was cleaning out the unventilated shed, became heated, and felt dizzy. She walked into the front of the Sonic restaurant and was placed in a chair. After sitting in the chair, Ms. Jardneaux passed out and fell out of the chair. The left side of her head struck the concrete floor, leaving a knot on the left side of her head above her ear; she also struck her left shoulder and arm, as well as her left knee and leg.

Ms. Jardneaux was taken from Sonic by ambulance to West Allen Hospital and then airlifted to Our Lady of Lourdes Regional Medical Center ("Lourdes") in Lafayette where she was treated for a stroke. There, she was diagnosed as having had a stroke and tPA, a very aggressive blood thinner, was administered by Dr. Saad Karim ("Dr. Karim"), a board certified vascular neurologist, to abort the stroke. After a two-day hospital stay at Lourdes, Ms. Jardneaux was told not to go back to work and to see her family physician, Dr. Patrick England ("Dr. England").

---

[1] For clarity, the legal name of the defendant/employer is Guernsey Holdings SDI TX Holdings Co., LLC. However, it is known and referred to in the record as Sonic. For ease of reference, we will refer to the employer/appellant as Sonic.

Ms. Jardneaux saw Dr. England on May 31, 2024. At that time, Ms. Jardneaux had bruising on the left side of her body from her shoulder to her elbow and from mid-thigh to mid-calf.

On June 4, 2024, Ms. Jardneaux was notified that Sonic was controverting her workers' compensation claim, questioning whether her injury was due to a pre-existing condition or disease that was the cause of her fainting spell. Counsel for Ms. Jardneaux filed a disagreement, stating "No pre-existing condition caused client's injuries. There is no medical basis that this is true. Claimant was injured in the course & scope of her job." Thereafter, on August 5, 2024, Ms. Jardneaux filed her petition for wage benefits, medical treatment, penalties and attorney fees, against Sonic and its insurer, Zenith Insurance Company, (collectively, "Defendants").

On or about August 23, 2024, Dr. Brett Cascio ("Dr. Cascio") filed a request with Zenith, seeking to evaluate and treat Ms. Jardneaux's left knee pain and left shoulder pain. Shortly thereafter, on August 26, 2024, Travis Kibler, a claims specialist for Zenith, denied the request as follows:

> Deny – denied claim Zenith is deferring utilization review of the treatment requests as Zenith is disputing liability for either the occupational injury for which treatment is being requested or the requested treatment itself on grounds other than medical necessity.

A similar request was made by Dr. Matthew Burton ("Dr. Burton"), a neurosurgeon who was evaluating Ms. Jardneaux for treatment of pain on the left side of her neck. The record contains no reply from either Defendant to Dr. Burton's request.

On September 30, 2024, Ms. Jardneaux filed a Motion for Expedited Hearing for Medical Treatment, stating, "Claimant asked to have an initial visit with his [sic] physician of choice ["Dr. Burton"] for her stroke and ["Dr. Cascio"] for her shoulder and knee. Claimant was denied this treatment for Dr. Cascio. The 1010 for [Dr.

2

Burton] was never answered." Sonic approved Ms. Jardneaux's October 2, 2024 request for medical evaluation with Dr. Cascio. And on October 25, 2024, the parties entered a Consent Judgment regarding Ms. Jardneaux's entitlement to medical treatment. In that judgment, Sonic agreed that Ms. Jardneaux was authorized to a one-time evaluation of Ms. Jardneaux with Dr. Burton; and treatment with Dr. Cascio "relative to those injuries sustained in her fall, pursuant to the dictates of the Medical Guidelines, and normal 1010 submission process." Defendants also reserved the right to challenge the "nature and extent of any such injuries pursuant to an SMO, IME, and/or should additional information be revealed in the course of discovery calling same into question." In exchange, Ms. Jardneaux deferred the issue of penalties and attorney fees to the merits of the case. On November 6, 2024, Sonic made its first payment of indemnity benefits. And on November 7, 2024, the Workers Compensation Judge ("WCJ") signed the consent judgment.

After Dr. Burton indicated that he offered Ms. Jardneaux a cervical fusion surgery on January 16, 2025, to address a spinal cord injury from her work-accident that manifested itself with neck pain, Sonic sought a second medical opinion ("SMO") from a neurosurgeon, Dr. Thomas Bertuccini ("Dr. Bertuccini"). After completing his examination of Ms. Jardneaux, on March 12, 2025, Dr. Bertuccini disagreed with Dr. Burton's diagnosis that she suffered a spinal cord injury and that surgery was required. Additionally, Dr. Bertuccini opined that it was common for neck pain to be associated with a shoulder injury and deferred any further opinion about a pre-existing shoulder problem and whether surgery was needed to address that medical condition to an orthopaedist. After Sonic received Dr. Bertuccini's SMO report on April 21, 2025, it approved the shoulder surgery Dr. Cascio recommended.

On May 15, 2025, a trial was held before the WCJ, and a final judgment was handed down on May 21, 2025. The court found that Ms. Jardneaux suffered physical injuries to her head, neck, left shoulder, and left knee, because of her work-injury. As a result of these injuries, the court considered Ms. Jardneaux temporarily, totally disabled. However, it found the stroke that occurred after her fall was unrelated to her work-injury.

The court also found Defendants were arbitrary and capricious in handling aspects of the claim and awarded a combined penalty of $6,000 for Defendant's delay in paying indemnity benefits, the denial of an initial visit to Dr. Cascio for Ms. Jardneaux's left shoulder and left knee injuries, and the delay in approving the left shoulder surgery recommended by Dr. Cascio. Lastly, the WCJ awarded an attorney fee of $5,000 for representation provided to Ms. Jardneaux and cast Defendants with all costs of the proceedings.

Defendants then appealed, limiting their argument to the assessment of penalties and attorney fees.

### ASSIGNMENTS OF ERROR

1. The [WCJ] committed manifest error in finding [Ms. Jardneaux] was entitled to a $2,000 penalty for a delay in paying indemnity benefits at trial.

2. The [WCJ] committed manifest error in finding [Ms. Jardneaux] was entitled to a penalty for denying an initial visit to Dr. Brett Cascio for the left shoulder and left knee injury at trial.

3. The [WCJ] committed manifest error in finding [Ms. Jardneaux] was entitled to a penalty for allegedly delaying the approval of the left shoulder surgery recommended by Dr. Cascio.

4. The [WCJ] committed manifest error in finding [Ms. Jardneaux] was entitled to $5,000 in attorney fees at trial.

## APPELLANTS' ARGUMENT

Defendants contend that the award of penalties and attorney fees was manifestly erroneous based on the facts of the claim, the initial controversion of the claim because of the unrelated stroke that occurred after the work-injury, and the timeline of events. Thus, they argue that the total penalty award of $6,000 for the delay in paying indemnity benefits, the initial denial of Ms. Jardneaux's visit to Dr. Cascio, and the delay in approving her surgery for her left shoulder and knee injury should be reversed. In the alternative, should this court find Defendants failed to reasonably controvert the claim, they argue that the $2,000 award for each penalty should be reduced to $350 each. Defendants argue that should it be found that the penalty awards were not justified, the award of $5,000 in attorney fees should also be declared to have been manifestly erroneous. Finally, they contend that even if the attorney fees are not reversed, Jardneaux is not entitled to an increase of attorney fees because she failed to answer the appeal.

## APPELLEE'S POSITION

Ms. Jardneaux, relying on *Guidry v. Serigny*, 378 So.2d 938 (La.1979); *Fontenot v. Wal-Mart Stores, Inc.*, 03-1570 (La.App. 3 Cir. 4/7/04), 870 So.2d 540, *writ denied*, 04-1131 (La. 6/25/04), 876 So.2d 843; and *Woodard v. Brookshire Grocery Co.*, 54,574 (La.App. 2 Cir. 8/10/22), 345 So.3d 439, *writ denied*, 22-1360 (La. 11/16/22), 349 So.3d 1001, contends that Defendants focused their attention on trying to show that the stroke, a non-compensable, pre-existing condition, caused her fall despite the fact that no evidence was provided to show that Ms. Jardneaux had suffered any stroke-like symptoms prior to her fall. She argues that to the contrary, the evidence showed that Ms. Jardneaux suffered a compensable work injury to her head, neck, left shoulder, and left knee, and Defendants failed to timely

provide indemnity payments and medical benefits. Therefore, she asserts that the WCJ was not manifestly erroneous when it awarded penalties and attorney fees for Defendants' failure to timely address these issues. Moreover, as asserted in her brief, attorney fees may be awarded in this court for defending the WCJ judgment.

## STANDARD OF REVIEW

It is well-established that the findings of a workers' compensation judge are subject to the manifest error or clearly wrong standard of appellate review. *Chaisson v. Cajun Bag & Supply Co.*, 708 So.2d 375 (La.1998). As shown in *Maricle v. Sunbelt Builders, Inc.*, 05-398, p. 3 (La.App. 3 Cir. 11/2/05), 916 So.2d 1226, 1229, *writ denied*, 05-2506 (La. 3/31/06), 925 So.2d 1261, "[t]he factual findings of the WCJ in a workers' compensation case are subject to a manifest error or clearly wrong standard of review." Likewise, "[t]he determination of whether an employer should be cast with penalties and attorney fees is a question of fact which should not be reversed absent manifest error." *Sigler v. Rand*, 04-1138, pp. 10–11 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 196, *writ denied*, 05-278 (La. 4/1/05), 897 So.2d 611, (citing *Romero v. Northrop–Grumman*, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144). Finally, "[a]wards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8–9 (La. 6/29/99), 737 So.2d 41, 46.

> In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Seal v. Gaylord Container Corp.*, 97–0688, p. 4 (La. 12/02/97), 704 So.2d 1161 at p. 4; *Banks*, 96–2840 at pp. 7–8, 696 So.2d at 556; *Freeman*, 93–1530 at p. 5, 630 So.2d at 737–38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence,

a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Seal,* 97–0688 at p. 5; *Banks*, 96–2840 at p. 8, 696 So.2d at 556; *Stobart,* 617 So.2d at 882. "Thus, 'if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Seal,* 97–0688 at p. 5; *Banks,* 96–2840 at p. 8, 696 So.2d at 556 (quoting *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990)).

*Chaisson*, 708 So.2d at 381.

## ANALYSIS

*The indemnity benefit*

Louisiana Revised Statutes 23:1201(B) states, "The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid." Likewise, La.R.S. 23:1201(F) states, in pertinent part:

> [F]ailure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.

Additionally, La.R.S. 23:1224 states: "No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for two weeks or longer after date of the accident, compensation for the first week shall be paid after the first two weeks have elapsed."

Defendants argue that it was not until October 16, 2024, that Dr. Cascio, an orthopaedic specialist, provided the first TTD opinion not related to the stroke Ms.

Jardneaux suffered. Defendants then argue that its payment of the first TTD benefit on November 6, 2024, was timely under the provisions of La.R.S. 23:1224. Accordingly, Defendants contend that their timely payment shows that the WCJ manifestly erred when it ruled that Ms. Jardneaux was entitled to a $2,000 penalty for the delay in instituting indemnity benefits. We find no merit to Defendants' argument.

By focusing its attention on the stroke, Sonic ignores that Ms. Jardneaux's accident was not the fainting spell or the stroke that caused her to fall. Her accident was the fall itself. *See Guidry*, 378 So.2d 938. When Ms. Jardneaux fell from her chair, she had been clearing a storage shed that contained items used in Sonic's day-to-day business. After carrying out those work-related duties, she became overheated and went into Sonic's building only to find it even hotter inside. Ms. Jardneaux's activities furthered Sonic's business, and her employment required her performance of those duties.

Although she was being treated for a post-accident stroke, the notes of Dr. Karim state, "Patient has chronic longstanding weakness in the left arm due to rotator cuff tear." Similarly, Elizabeth Savoy, the Physician Assistant who treated Ms. Jardneaux on May 25, 2024, noted that "[s]he was able to move all 4 extremities [but] does have limited range of motion to left arm due to rotator cuff tear. She does complain of pain in the left shoulder."

On May 30, 2024, Travis Kiebler ("Mr. Kiebler"), Zenith's senior claims specialist, questioned Ms. Jardneaux in a recorded telephone interview about the work-accident. In response to the question, "What part of your body was injured in this accident?" Ms. Jardneaux responded, "I have a knot on the side of my head above my left ear. Left shoulder is in a lot of pain. I am using a brace on my left

knee.  Left knee."  Under Nurse Activity, it is also noted "History of rotator cuff repair[.]"

In *Sweezy v. Lake Charles Healthcare, LLC*, 25-122, pp. 13–14 (La.App. 3 Cir. 9/10/25), 422 So.3d 314, 323 (emphasis in the original), this court stated:

> A trial court's award for penalties and attorney fees is proper absent evidence contradicting the facts, medical testimony, and records adduced at trial.  "The unambiguous language of La. R.S. 23:1201 clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 8 (La. 12/1/98), 721 So.2d 885, 890.  "[T]he test to determine whether an employee's right to benefits has been reasonably controverted turns on whether the employer or his insurer had **sufficient factual information to reasonably counter the factual information presented by the claimant.**" *Thibodeaux v. L.S. Womack, Inc.*, 94-1375, p. 2 (La.App. 3 Cir. 4/5/95), 653 So.2d 123, 125.  The employer "has a continuing duty to investigate the employee's claim and to assess factual information before the denial of benefits." *Pete v. Quality Const. Specialists & Bridgefield Cas. Ins. Co.*, pp. 6-7 (La.App. 3 Cir. 12/9/09), 25 So.3d 241, 245, *writ denied*, 10-41 (La. 3/12/10), 28 So.3d 1029.

Again, in her answers to interrogatories propounded by Defendants, Ms. Jardneaux stated that she suffered a work accident two years earlier when she worked for Sonic; at that time, she tore her rotator cuff.  Although she was off work for a while, she was later able to continue working as a carhop at Sonic.  She stated that her medical treatment was paid for, but not the wages she lost.[2]  In her testimony at trial, Ms. Jardneaux also stated that her fellow employees told her that when she passed out, she landed on her left side and struck her head on the concrete floor.

---

[2]  There is no evidence about how Ms. Jardneaux was compensated for her medical expenses for this prior shoulder injury.  Even though those medical records may have been available, there is nothing in the record to show that Defendants sought or reviewed these documents.

Considering the record evidence, we find that Sonic did not fully investigate Ms. Jardneaux's claim, ignored evidence of other injuries she had in her fall, and failed to reasonably controvert Ms. Jardneaux's entitlement to TTD indemnity benefits for her work-related injuries separate from her post-accident stroke. After reviewing the arguments of counsel and the facts of this case, we find that the WCJ did not abuse its discretion when it found that Ms. Jardneaux was entitled to a $2,000 penalty for delaying her indemnity benefits. Furthermore, as this medical information was available to the Defendants immediately after the work-accident and payment of indemnity benefits did not commence until November 6, 2024, we find no merit to Defendants' contention that the $2,000 penalty should be reduced.

*Denial of an initial doctor's visit*

Further Defendants contend that the WCJ manifestly erred when it assessed a $2,000 penalty for their failure to authorize Ms. Jardneaux's initial visit with Dr. Cascio. They argue that August 23, 2024, was the first time Ms. Jardneaux requested an evaluation with her choice of physician, Dr. Cascio. Even though Defendants admit that they denied Ms. Jardneaux's request, they assert that denial was because they had only been provided with medical records that stated she was diagnosed with an ischemic stroke and had left-sided weakness, face droop, and aphasia.

Nevertheless, Defendants stress that ultimately they did approve Ms. Jardneaux's request for Dr. Cascio's treatment on October 2, 2024. Defendants rely on La.R.S. 23:1201(E)(1), a statute that states that medical benefits shall be paid within sixty days after the employer or insurer receives written notice thereof. Defendants point out that their ultimate approval was provided within forty days of Ms. Jardneaux's request, well within the sixty day window provided in La.R.S.

23:1201(E)(1), and penalties were not assessable against them. For the following reasons, we find no merit to Defendants' assertion.

In *Batiste v. Minerals Technology, Inc.*, 21-795 (La.App. 3 Cir. 6/8/22), 344 So.3d 193, this court highlighted the WCJ's failure to address the employee's choice of physician claim separately from his claim for medical expenses. Indeed, our reading of La.R.S. 23:1201(E) shows that it only mentions "medical benefits" when it imposes a payment window of sixty days and makes no such reference to the selection of a treating physician. Besides, La.R.S. 23:1201(F) further recognizes this distinction when it states that "failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians . . . shall result in the assessment of a penalty . . . together with reasonable attorney fees for each disputed claim[.]" The specific use of the disjunctive word "or" in La.R.S. 23:1201(F) clearly indicates a distinction between medical payments and the employee's right to choose a physician.

Moreover, La.R.S. 23:1121(B)(1) provides that: (i) the employee has a right to a *summary proceeding* when the employer denies his right to an initial physician of choice; and (ii) the WCJ is mandated to set the hearing within three days of receiving the employee's motion for the *expedited hearing* and the hearing shall be held no less than ten nor more than thirty days after the employee or his attorney files the motion for an expedited hearing. If we were to accept Defendants' contrary argument, it would require us to insert language in La.R.S. 23:1201(F) that does not exist. Additionally, such an interpretation as Defendants suggest would weaken the employee's right to promptly select one treating physician in any field or specialty as it would create an expansive window of approval in favor of the employer.

Next, Defendants contend that they did not have a definitive diagnosis, other than that Ms. Jardneaux had suffered from a stroke, to support approval of Dr. Cascio's treatment of her neck, shoulder, and knee injury. For the following reasons, we find no merit to that argument.

The medical records from Lourdes indicate that Ms. Jardneaux had a prior torn rotator cuff and left knee injury, that the left side of her body exhibited significant bruising, that she complained of left shoulder and leg pain during her hospitalization, and that she fell while she was seated in a chair in the anteroom of an overheated Sonic restaurant. Our review of the record shows that Ms. Jardneaux made similar statements to Mr. Kiebler just days after her work-injury. Dr. Karim would later testify at trial that the fall at Sonic could not have caused the stroke. And Dr. Karim also said that even though the stroke could explain the left eye loss of Ms. Jardneaux's peripheral vision, her word aphasia, and her left foot drop, he could not connect the stroke with bruising to the left side of Ms. Jardneaux's body.

In *Tate v. Cabot Corporation*, 01-1652, pp. 5–6 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044, this court stated:

> Because an employer takes his employee as he finds him, a preexisting condition does not prevent recovery through workers' compensation. *Curtis v. Wet Solutions, Inc.,* 98–789 (La.App. 3 Cir. 12/9/98); 722 So.2d 421. Aggravation of a preexisting injury may constitute a disabling injury when, for example, the plaintiff begins to suffer new symptoms after the second workplace accident. *Howell v. Serv. Merchandise Co., Inc.,* 95-79 (La.App. 3 Cir. 8/9/95); 663 So.2d 96. To be compensable, the aggravation of a preexisting injury must result from an identifiable and discernable incident. *City of Eunice v. Credeur,* 99-302 (La.App. 3 Cir. 10/13/99); 746 So.2d 146, *writ granted in part, judgment vacated in part on other grounds,* 99–3249 (La.1/28/00); 753 So.2d 226. Moreover, there must be a causal link between the aggravation and a work related incident. *Turner v. Lexington House,* 14-1264 (La.App. 3 Cir. 4/15/15), 176 So.3d 1071, *writ denied*, 15-952 (La. 8/23/15), 176 So.3d 405.

Additionally, in *Pete v. Quality Const. Specialists & Bridgefield Cas. Ins. Co.*, 09-642, pp. 6–7 (La.App. 3 Cir. 12/9/09), 25 So.3d 241, 245, *writ denied*, 10-41 (La. 3/12/10), 28 So.3d 1029, this court stated:

> The employer or insurer has a continuing duty to investigate the employee's claim and to assess factual information before the denial of benefits. *Penn v. Wal–Mart Stores, Inc.,* 93–1262 (La.App. 3 Cir. 6/15/94), 638 So.2d 1123, *writ denied,* 94–1835 (La.10/28/94), 644 So.2d 651. Thus, a failure to investigate the employee's claim subjects the employer or insurer to penalties and attorney fees. *McClendon v. Keith Hutchinson Logging,* 96–2373 (La.App. 1 Cir. 11/7/97), 702 So.2d 1164, *writ denied,* 97–2872 (La.2/13/98), 706 So.2d 995.

Considering the well-established jurisprudence and the facts reflected in the record, we find the WCJ was not manifestly erroneous when it imposed penalties and attorney fees for Defendants' failure to timely approve Dr. Cascio's treatment of Ms. Jardneaux.

*Request for shoulder surgery*

Defendants assert that when they received Dr. Burton's medical notes offering a cervical fusion surgery to address Ms. Jardneaux's neck pain[3] and Dr. Cascio's approval request to perform a left shoulder surgery, they had only received medical records that outlined that she had suffered a stroke with left-side deficits and medical complaints of left shoulder pain. Nevertheless, they assert that in their requests for surgical approval, neither Dr. Burton nor Dr. Cascio identified if the pain and surgical necessity were due to Ms. Jardneaux's fall out of the chair at Sonic or a residual result of the stroke or a combination of both. For that reason, Defendants state in their brief that they "exercised the right to a SMO on the cervical issue[,]" and an examination was scheduled for March 12, 2025, with Dr. Bertuccini, a neurosurgeon.

---

[3] The record does not show that Dr. Burton sought approval of that surgery from Defendants.

13

As noted earlier, Dr. Bertuccini provided Sonic with his SMO report on April 21, 2025. At that time, he disagreed with Dr. Burton's recommended neck surgery but deferred his opinion to an orthopaedist "about a pre-existing left shoulder problem and/or indication for the surgery[.]" Upon receipt of Dr. Bertuccini's SMO report, Sonic approved Ms. Jardneaux's shoulder surgery. Based upon this scenario, Defendants further argue that Dr. Bertuccini's report clarified the causation issue relative to Ms. Jardneaux's shoulder pain and approved that surgery sixty-seven days after Dr. Cascio's request was received. Accordingly, Defendants argue that they had a reasonable basis to deny shoulder surgery pending the SMO report. For the following reasons, we find no merit to Sonic's argument.

We have earlier detailed the records from Lourdes and Zenith's investigation of the complaints that Ms. Jardneaux specified about her left shoulder pain while she was hospitalized and that two years prior, she had a rotator cuff injury to her left arm. Additionally, Dr. Karim's trial testimony was clear that a stroke cannot cause a complete rupture of the rotator cuff and shoulder labrum.

Considering these well-established facts in the record, we find the WCJ was not manifestly erroneous when it imposed penalties and attorney fees for Sonic's delay in authorizing Ms. Jardneaux's left shoulder surgery.

Furthermore, even though Defendants had information on which to connect Ms. Jardneaux's injuries to her fall and not the post-accident stroke, it was not until Defendants received Dr. Bertuccini's SMO report on April 21, 2025, that they approved the shoulder surgery Dr. Cascio recommended. As of at least October 16, 2024, Dr. Cascio opined that Ms. Jardneaux had a complete rotator cuff tear or rupture of her left shoulder. In light of these facts, we likewise find no merit to Defendants assertion that we should reduce that $2,000 penalty to $350.

*Attorney fees*

Having found no merit to their assignments of error, we now address Defendants' further assertion that the WCJ abused its discretion when it awarded a $5,000 attorney fee.

Defendants argue that during the nine and one-half months that Ms. Jardneaux's claim was pending: she met and spoke with her attorney three or four times; he conducted minimal discovery; and "the result of trial was not [to] obtain any additional benefit to [Ms. Jardneaux]." Contending that the record only supports an award of attorney fees of $700 at most, Defendants urge us to reduce the attorney fee award accordingly. For the following reasons, we find no merit to Defendants' argument.

A trial court has great discretion in determining an award of attorney fees. *Corbello v. Iowa Prod.*, 02-826 (La. 2/25/03), 850 So.2d 686. Under the abuse of discretion standard, "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact." *Covington v. McNeese State Univ.*, 12-2182, p. 11 (La. 5/7/13), 118 So.3d 343, 351. However, the trial court's factual findings are reviewed pursuant to the manifest error standard of review. *Id.*

In *Caldwell v. West Fraser (South), Inc.*, 23-731, p. 25 (La.App. 3 Cir. 8/21/24), 393 So.3d 982, 999, *writ denied*, 24-1171 (La. 12/11/24), 396 So.3d 965, the court stated:

> The Louisiana Supreme Court has long held, "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Authement v. Shappert Eng'g,* 02-1631, p. 11 (La. 2/25/03), 840 So.2d 1181, 1188. When determining whether penalties and attorney fees should be imposed on an employer, the crucial inquiry is "whether the employer had an articulable and objective reason to deny benefits at the time it

15

took action." *Id*. "To reasonably controvert a claim, an employer must have sufficient factual and medical information to reasonably counter the factual and medical information provided by the employee." *McCarty v. State, Off. of Risk Mgmt.*, 94-033, p. 5 (La.App. 3 Cir. 10/5/94), 643 So.2d 886, 889.

In *Charles v. Acadia St. Landry Guest Home*, 01-129, pp. 9–10 (La.App. 3 Cir. 6/6/01), 787 So.2d 1206, 1212–13, *writ denied*, 01-1965 (La. 10/26/01), 799 So.2d 1146, this court said:

> While we are loath to base an award of attorney fees solely on the number of billable hours, the amount of time devoted to a case is a factor to be used in determining the amount of an attorney fee award. *Britton v. City of Natchitoches*, 97-1038 (La.App. 3 Cir. 2/11/98); 707 So.2d 142, *writ denied*, 98-203 (La. 6/26/98); 719 So.2d 1057. We also base the amount of the attorney fee award on the degree of skill and ability exercised, the amount of the claim, and the amount recovered. *Id*. An additional factor to be considered is the worker's ability to hire counsel. We do not exist in a vacuum, immune to the realities of the real world and the inability of a worker's compensation claimant to find effective or adequate counsel. This is a factor that must be contemplated, considering the real world reluctance of counsel in today's legal environment to accept worker's compensation cases. "The injured worker would effectively be denied the protection offered by the workers' compensation statutes if he or she was unable to find an attorney to represent his or her interests." J*ones v. Evangeline of Natchitoches, Inc.*, 97-869, pp. 7–8 (La.App. 3 Cir. 12/10/97); 704 So.2d 905, 909, *writ not considered*, 98-0106 (La.3/13/98); 712 So.2d 864.

In the present case, Defendants chose to test whether Ms. Jardneaux's work injuries to her neck, left shoulder, and knee were compensable or were related to the stroke she suffered post-accident. In so doing, we found that Sonic presented insufficient factual and medical information to reasonably counter the facts and medical information Ms. Jardneaux provided. After reviewing the positive impact counsel for Ms. Jardneaux made for his client, we find the WCJ did not abuse its discretion in awarding a $5,000 attorney fee.

However, we note that counsel for Ms. Jardneaux has asserted in brief that he is entitled to additional attorney fees for successfully defending the judgment of the

WCJ. In *Clover v. Redfish Rentals, Inc.*, 22-470, pp. 11–12 (La.App. 3 Cir. 2/8/23), 357 So.3d 522, 532, this court stated:

> Here, there is no doubt that Claimant has incurred more costs in successfully defending his award from the WCJ's judgment, and an award of attorney's fees for work done on appeal may be proper. However, an appellee who neither answers an appeal nor appeals from the trial court's judgment is not entitled to additional attorney's fees for legal services rendered on appeal. La.Code Civ.P. art. 2133; *Trejo v. Canaan Const., LLC*, 52,697 (La.App. 2 Cir. 6/26/19), 277 So.3d 499. Although a request for additional attorney fees is made in his appeal brief, Claimant did not correctly request them by answering this appeal. "An assertion in a brief cannot serve as an answer to appeal." *Pritchard v. GEICO Ins. Co.*, 17-273, 17-274, p. 10 (La.App. 3 Cir. 11/8/17), 242 So.3d 787, 794. Thus, we deny Claimant's request to increase his award for attorney fees incurred in the process of this appeal.

Here, counsel for Ms. Jardneaux neither answered the appeal nor appealed. His request to increase the attorney fee asserted only in the appellate brief is denied.

## DECREE

For the reasons set forth herein, we affirm the judgment of the WCJ. The request for additional attorney fees for representation on appeal by Ms. Jardneaux is denied. Costs of this appeal are assessed to Guernsey Holdings SDI TTX Holdings Co, LLC and Zenith Insurance Company.

**AFFIRMED.**